UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

MICHAEL GRESHAM,

               Plaintiff,               Case No. 1:10-cv-1038

v.                                             Honorable Robert Holmes Bell

PATRICIA L. CARUSO et al.,

               Defendants.
_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's complaint[1] will be dismissed for failure to state a claim.

---

[1] On December 2, 2010, this Court ordered Plaintiff to file an amended complaint on the form. Plaintiff never complied with the order.

## Factual Allegations

Plaintiff currently is incarcerated in the Ionia Maximum Correctional Facility. In his *pro se* complaint, Plaintiff sues Michigan Department of Corrections (MDOC) Director Patricia L. Caruso, former Michigan Governor Jennifer M. Granholm, Corrections Officer (unknown) Figueroa, Assistant Deputy Warden Erica Huss, Lieutenant (unknown) Reeves, Resident Unit Officers (unknown) Zwiker and J. Smith, Hearings Investigator Parrish Smith, Hearings Officer (unknown) Marutiak, Health Unit Manager Jody Lebarre, Doctor (unknown) Czop, Physician Assistant Michael Kennerly, Sergeant (unknown) Kelly, Grievance Coordinator M. Breedlove and (unknown) part(y)(ies).

Plaintiff's complaint concerns a major misconduct conviction, food loaf and food slot restrictions and a 2009 rape and 2010 assault on Plaintiff. The complaint first alleges that, on September 18, 2010, Defendant Figueroa wrote a misconduct report against Plaintiff for exposing himself. (Major Misconduct Report, Page ID #10, docket #1-1.) Figueroa described the incident as follows:

> While conducting routine rounds, Prisoner Gresham #272603 was standing on his bed with his erect penis in his hand. Prisoner Gresham at no time attempted to cover himself up. Prisoner Gresham stated "stay by my window Officer Figueroa!" This officer finds that this prisoner's behavior was [harassing] and degrading.

*Id.* Defendant Marutiak conducted an administrative hearing on the charge on September 27, 2010. In the Major Misconduct Hearing Report, Marutiak evaluated the following evidence in addition to the misconduct report:

> [Hearings Officer] read the misconduct report and investigation in their entirety to the prisoner. The investigation consists of the prisoner's statement, in relevant part, to the Hearings Investigator that the misconduct is retaliatory and that he (prisoner) could not have committed the act of holding his penis due to the pain of bite marks

> on his penis and testicles and a hernia; a statement from HUM LeBarre that the prisoner did complain of alleged bite marks, was examined by the physician, and that he (prisoner) only complained of such marks above his waist area; and three (3) prisoner-witness statements.
>
> The prisoner then entered a plea of not guilty and stressed the point the misconduct alleged he was "holding" his penis versus "stroking" it. [Hearings Officer] determined the point to be a difference without a distinction and so informed the prisoner. The prisoner then explained the impossibility of "holding" his penis due to the pain he experiences from a hernia. Prisoner had nothing further to add.

(Major Misconduct Hearing Report, Page ID#14.) Defendant Marutiak found Plaintiff guilty of the charge for the following reasons:

> [Hearings Officer] finds the stronger impression is that prisoner Gresham intentionally exposed his sexual organs to C/O Figueroa on 9/18/10 at approximately 2000 hrs., as evidenced by the descriptive and firsthand report from the officer and by the corroborative evidence that she was at the prisoner's segregation cell door at the time. More specifically, as the officer was making a round of the area, prisoner Gresham was standing on his cell bed with his erect penis in his hand, thereby exposing his sexual organs to her when he knew she was present. The prisoner underscored his awareness of the officer's presence by, first of all, standing on his bed so she would need to clearly see him through the segregation window and, secondly, by telling her "stay by my window, Officer Figueroa."
>
> The prisoner's claim of his inability to "hold" his penis is rejected by the [Hearings Officer] based on the medical documentation from HUM LeBarre and also as plainly frivolous. The claim of retaliation is not supported by the record. Two of the prisoner-witnesses state they have no knowledge of the incident and the third prisoner-witness was not positioned to see what occurred inside of the charged prisoner's cell.

*Id.* Plaintiff was sentenced to thirty days of detention. In addition, under Michigan law, a prisoner loses good-time credits for the month of his major misconduct disciplinary conviction. *See* MICH. COMP. LAWS § 800.33. Moreover, the warden may order forfeiture of previously accumulated good-time credits in certain cases. *Id.*

Plaintiff alleges several First Amendment and Fourteenth Amendment violations regarding his misconduct. For his First Amendment claims, Plaintiff states that several Defendants retaliated against him for filing a grievance and a lawsuit against Defendant Figueroa and her co-workers. Plaintiff argues that Defendant Figueroa retaliated by fabricating the misconduct against him. He also alleges that Defendants Parrish Smith, Marutiak, Lebarre, Czop, Huss, Kennerly and Reeves retaliated by going along with the false misconduct. Moreover, Plaintiff argues that Defendants Lebarre, Czop and Kennerly retaliated by falsifying medical documents for the misconduct hearing. Plaintiff further alleges that Defendant Lebarre retaliated by giving a false statement for the misconduct hearing. Plaintiff finally states that Defendants Huss, Reeves, Marutiak, Lebarre and Parrish Smith retaliated by placing Plaintiff on window restrictions that did not match the misconduct's version of the window restrictions.

As for his Fourteenth Amendment claims regarding the misconduct proceedings, Plaintiff argues that Defendants Parrish Smith and Marutiak violated his due process rights by failing to investigate the misconduct charge and by tampering with a prisoner-witness statement. Plaintiff claims that a prisoner-witness was in a position to see inside his cell. Plaintiff also argues that Defendants Lebarre, Czop and Kennerly denied his due process rights by falsifying medical documents regarding the bite marks that Plaintiff received during an assault. Plaintiff states that he was bitten and stabbed in his genitals rather than above the waist. Plaintiff finally claims that Defendant Lebarre gave a false statement for the misconduct hearing.

Plaintiff's complaint also concerns food loaf and food slot restrictions. Apparently, the MDOC placed Plaintiff on food loaf and restricted the opening of Plaintiff's food slot in segregation because Plaintiff blocked the food slot with his tray on September 15, 2010. (MDOC

Restriction of Segregation Property and Privileges, Page ID #19, docket #1-1.) Soon thereafter, Plaintiff claims that several officers, including Officers J. Smith and Zwiker, threw Plaintiff's food loaf on the floor and told him that he would only receive food services if he showed his buttocks like he did for other officers. Plaintiff also alleges that he never received a misconduct for his food loaf and food slot restrictions. Plaintiff further states that Defendants Zwiker and Huss retaliated against Plaintiff by authorizing the food loaf and food slot restrictions because Plaintiff filed grievances and a lawsuit against Zwiker and his co-workers.

On July 10, 2009 and September 23, 2010, Plaintiff claims that he was raped and assaulted, respectively. Plaintiff argues that "supervisor" Defendants failed to protect him during those incidents in violation of his Eighth Amendment rights. (Compl., Page ID #7, docket #1.)

In addition, Plaintiff alleges that Resident Unit Manager John Payne, Assistant Resident Unit Supervisor Jimmy Waters, Warden Willie Smith, Deputy Warden Nanette Norwood, Inspector Betty Goodson, Assistant Resident Unit Supervisor Aaron Vroman, Administrative Assistant R. Groves, and Defendants Huss, Breedlove, Caruso and Granholm failed to train and supervise staff.[2] Moreover, Plaintiff alleges that Defendant Breedlove failed to respond to Plaintiff's grievances.

Plaintiff seeks injunctive relief as well as punitive damages of forty-five million dollars.

---

[2] Resident Unit Manager John Payne, Assistant Resident Unit Supervisor Jimmy Waters, Warden Willie Smith, Deputy Warden Nanette Norwood, Inspector Betty Goodson, Assistant Resident Unit Supervisor Aaron Vroman and Administrative Assistant R. Groves were not named as Defendants in Plaintiff's complaint.

## **Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, ___ F.3d ___, 2010 WL 5288892, at *2 (6th Cir. Dec. 28, 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr.*

*Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

I. <u>Failure to make allegations</u>

While Plaintiff named Sergeant (unknown) Kelly as a Defendant in his complaint, he failed to make any factual allegations against Kelly. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 200 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Because Plaintiff fails to mention

Defendant Kelly in the body of his complaint, his allegations fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, Defendant Kelly will be dismissed for failure to state a claim.

## II. Failure to Supervise and/or Respond to Grievances

Plaintiff claims that Patricia Caruso and Jennifer Granholm failed to supervise staff and stop the retaliation against Plaintiff. Plaintiff also alleges that Defendant Grievance Coordinator Breedlove failed to respond to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Caruso, Granholm or Breedlove engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### III. Fourteenth Amendment

In his complaint, Plaintiff alleges that his major misconduct proceedings and his food loaf and food slot restrictions violated his due process rights.

#### A. **Misconduct Proceedings**

Plaintiff claims that his due process rights were violated when he was convicted of a major misconduct for exposing himself. The starting point for any discussion of the procedural due process rights of a prisoner subject to a disciplinary proceeding is *Wolff v. McDonnell,* 418 U.S. 539 (1974). In *Wolff,* the Supreme Court held that prison disciplinary proceedings must meet minimal due process requirements by (1) giving inmates advance written notice of charges at least 24 hours prior to the disciplinary hearing; (2) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense; and (3) providing the inmate with a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-69. The right to call witnesses or present evidence, however, is not absolute. *Id.* at 566.

Plaintiff does not dispute that he received notice of the charges, that he was able to present evidence in his defense or that he received a copy of the Major Misconduct Hearing Report. Thus, the *Wolff* requirements are not at issue. Rather, Plaintiff argues that he was denied a fair hearing because (1) Defendants Parrish Smith and Marutiak failed to investigate the misconduct charge and tampered with a prisoner-witness statement; (2) Defendants Lebarre, Czop and Kennerly falsified medical documents; and (3) Defendant Lebarre gave a false statement for the misconduct hearing.

With regard to the burden of proof, "[N]ot much evidence is required to support the action of a prison disciplinary board." *Williams v. Bass,* 63 F.3d 483, 486 (6th Cir. 1995) (citing

*Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 455 (1985)). The Supreme Court in *Hill* held that the requirements of due process are satisfied if "some evidence" supports the prison disciplinary board's decision to revoke good-time credits. *Hill*, 472 U.S. at 455. In determining whether a decision of a prison disciplinary board is supported by "some evidence," a federal court is "not required to examine the entire record, make an independent assessment of the credibility of witnesses, or weigh the evidence." *Williams,* 63 F.3d at 486 (citing *Hill,* 472 U.S. at 455). "Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Williams,* 63 F.3d at 486 (citing *Hill,* 472 U.S. at 455-56) (emphasis added). Moreover, the Constitution does not require that the evidence logically preclude any conclusion but the one reached by the hearings officer in the disciplinary proceeding. *Hill,* 472 U.S. at 456; *see also Falkiewicz,* 271 F. Supp. 2d at 948. A hearings officer in a prison disciplinary proceeding is not required to find the prisoner guilty beyond a reasonable doubt, or find that guilty was the only reasonable interpretation of the evidence. *Thomas v. Marberry,* No. 06-cv-13282, 2007 WL 1041250, at *2 (E.D. Mich. Apr. 4, 2007) (citing *Mullins v. Smith,* 14 F. Supp. 2d 1009, 1012 (E.D. Mich. 1998)).

Plaintiff contends that Hearings Officer Marutiak relied on a false medical report, a fabricated statement by Defendant Lebarre and a false prisoner-witness statement as evidence of the misconduct charge. Officer Figueroa provided a firsthand report of Plaintiff's actions. As stated in Officer Figueroa's report, Figueroa found Plaintiff standing on his bed with his erect penis in his hand. Instead of covering himself up, Plaintiff said "stay by my window Officer Figueroa." (Major Misconduct Report, Page ID #10, docket #1-1.) Based upon Figueroa's report, there clearly was

"some evidence" supporting the Hearings Officer Marutiak's finding of guilt.[3] *See Williams,* 63 F.3d at 486 (citation omitted). Moreover, Plaintiff received the due process protections afforded by *Wolff*. Plaintiff, therefore, fails to state due process claims against Defendants Parrish Smith, Marutiak, Lebarre, Czop and Kennerly arising from the misconduct proceedings.[4]

B. **Food Loaf and Food Slot Restrictions**

Plaintiff also argues that he was denied his due process rights by being placed on food loaf and food slot restrictions in segregation. Plaintiff enjoys no constitutional or state-created right to be free from a temporary diet of food loaf or a food slot restriction. The Supreme Court has held that state created liberty interests "will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 483 (1995); *see also Rimmer-Bey v. Brown*, 62 F.3d 789-790-91 (6th Cir. 1995). A temporary food loaf diet and food slot restriction are not an atypical and significant hardship for segregation prisoners who have engaged in misconduct. *See Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541 (6th Cir. Feb. 1, 1996); *Johnson v. Gummerson*, No. 99-0071, 1999 WL 822523, at *1 (2d Cir. Sept. 24, 1999). Because Plaintiff has no liberty interest, he was not entitled to a hearing before being placed on food loaf and food slot restrictions. Plaintiff

---

[3] Plaintiff also argues that Officer Figueroa retaliated against him by writing the misconduct. In Section IV, *infra*, the Court finds that Plaintiff fails to state a claim for retaliation against Figueroa. Further, Hearings Officer Marutiak found that Plaintiff's claim of retaliation was not supported by the evidence at the misconduct hearing.

[4] Defendant Hearings Officer Marutiak is also immune from Plaintiff's claims for monetary damages. The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity in relation to actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); Mich. Comp. Laws §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same).

therefore fails to state a claim for violation of his due process rights based on his food loaf and food slot restrictions.

    IV.  First Amendment Retaliation

Plaintiff argues that several Defendants retaliated against him in violation of his First Amendment rights for filing grievances and lawsuits against Defendants Figueroa and Zwiker. Plaintiff specifically alleges that: (1) Defendant Figueroa retaliated by writing a false misconduct ticket against Plaintiff; (2) Defendants Parrish Smith, Marutiak, Lebarre, Czop, Huss, Kennerly and Reeves retaliated by failing to stop the misconduct proceedings; (3) Defendants Lebarre, Czop and Kennerly retaliated by falsifying medical documents for the misconduct hearing; (4) Defendant Lebarre retaliated by providing a false statement for the misconduct hearing; (5) Defendants Huss, Reeves, Marutiak, Lebarre and Parrish Smith retaliated by placing Plaintiff on window restrictions that did not match the misconduct's version of the window restrictions; and (6) Defendants Zwiker and Huss retaliated against him by authorizing a food loaf diet and a food slot restriction.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The filing

of a prison grievance is constitutionally protected conduct for which a prisoner cannot be retaliated against. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). The filing of a civil rights action is also constitutionally protected conduct. *See Thaddeus-X*, 175 F.3d at 391; *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002).

Assuming Plaintiff's allegations are sufficient to satisfy the first two elements of a retaliation claim, his wholly conclusory allegations of retaliatory intent are insufficient to support the third element. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening).

Plaintiff merely alleges the ultimate fact of retaliation in this action. Plaintiff has not presented any facts whatsoever to support his conclusion that Defendants Figueroa, Marutiak, Parrish Smith, Lebarre, Czop, Huss and Reeves retaliated against him because he filed a grievance

and a lawsuit against Figueroa and her co-workers or that Defendants Zwiker and Huss retaliated against him for filing grievances and a lawsuit against Zwiker and his co-workers. Plaintiff attached a nearly illegible grievance form to his complaint. The grievance form states: "What attempt did you make to resolve this issue prior to writing this grievance? On what date?" Plaintiff replied "9/14 - 20/10." (Attach. to Compl., Page ID #15, docket #1-1.) Plaintiff received his food slot restriction on September 16, 2010 and his misconduct ticket on September 18, 2010. (Attach. to Compl., Page ID ##10, 19, docket #1-1.) Obviously, the attached grievance, which Plaintiff attempted to resolve on September 20, 2010, was filed *after* Plaintiff received the food slot restriction and his misconduct ticket. As a result, the grievance could not have been the impetus for his retaliation claims. Plaintiff did not attach any other grievance forms to his complaint and does not specifically allege in which lawsuit he named Figueroa or Zwiker as Defendants.[5] As Plaintiff has over twenty prisoner civil rights cases currently pending in this Court, it would be easy to allege that any adverse action taken by prison officials or employees is retaliatory. Moreover, Plaintiff makes no allegations that any Defendant had a particularly close relationship with Figueroa or Zwiker. Nor does he allege any other fact that could support a reasonable inference of retaliatory motive. For all these reasons, Plaintiff fails to state a retaliation claim against Defendants Figueroa, Marutiak, Parrish Smith, Lebarre, Czop, Zwiker, Huss, Kennerly and Reeves. *See Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

---

[5] While Plaintiff cites Case No. 2:09-cv-231 in his complaint, that case does not list Figueroa or Zwiker as a Defendant. *See Gresham v. Granholm et al.,* Case No. 2:09-cv-231 (W.D. Mich.); Compl., Page ID #8, docket #1.

V.      Eighth Amendment

Plaintiff claims that the "supervisor" Defendants[6] failed to protect him from other prisoners who stabbed him on September 23, 2010 and raped him on July 10, 2009 in violation of his Eighth Amendment rights.[7] Plaintiff also argues that Defendants J. Smith and Zwiker violated his Eighth Amendment rights by throwing his food loaf on the floor and harassing Plaintiff.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

---

[6]Plaintiff has also failed to specifically name which "supervisor" Defendants allegedly violated his Eighth Amendment rights. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544.

[7]The Court notes that Plaintiff filed a case in this Court regarding the alleged July 10, 2009 rape. *See Gresham v. Granholm et al.,* Case No. 2:09-cv-231 (W.D. Mich.).

A.      **Failure to Protect**

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that a prisoner would cause the plaintiff serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). Although Plaintiff alleges that the "supervisor" Defendants were "deliberately indifferent" to his assault and rape, he fails to identify any conduct committed by those Defendants that violated the Eighth Amendment. Plaintiff does not allege that the "supervisor" Defendants had any reason to know, in advance of the assault or rape, that other inmates presented a threat to Plaintiff's safety. Moreover, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *See Iqbal*, 129 S. Ct. at 1948; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495. Plaintiff therefore fails to state an Eighth Amendment claim against the "supervisor" Defendants.

B.      **Harassment and Food Loaf**

Plaintiff alleges that Officers J. Smith and Zwiker violated his Eighth Amendment rights by harassing him and throwing his food loaf on the floor. Plaintiff claims that Officers J. Smith and Zwiker told him that he would only receive food services if Plaintiff showed his buttocks

to them. In order for a prisoner to prevail on a Eighth Amendment claim for his conditions of confinement, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Defendants J. Smith and Zwiker's actions do not rise to the level of a constitutional violation. Use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d at 954-55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, No. No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Moreover, Plaintiff does not allege that he was denied food when he did not comply with their

request. Therefore, Plaintiff fails to state an Eighth Amendment claim against Defendants J. Smith and Zwiker for harassing him.

Furthermore, Defendants J. Smith and Zwiker's did not violate Plaintiff's Eighth Amendment rights by throwing his food loaf on the floor. Plaintiff does not allege that he did not receive a replacement food loaf or that he was unable to eat the food loaf that had been thrown on the ground. Even if Plaintiff did not receive his food on one occasion, temporary inconveniences do not violate the Eighth Amendment. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.) While Defendants J. Smith and Zwiker's actions were unprofessional, they were not unconstitutional. *See Ivey*, 832 F.2d at 954 (" [n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment.") Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendants J. Smith and Zwiker for throwing his food loaf on the floor.

VI.     Pending Motions

In this action, Plaintiff filed a motion to appoint counsel and a motion for preliminary injunction (docket #5) and a letter that requests the Court to make copies of all of Plaintiff's pending pleadings (docket #21). Because the Court finds that Plaintiff's complaint fails to state a claim upon which relief may be granted, his motions to appoint counsel and for preliminary injunction (docket #5), and request for copies (docket #21) will be denied as moot.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment and Order consistent with this Opinion will be entered.


Dated: January 26, 2011 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE